## Case No. 14,382.

UNION PAC. R. CO. v. McSHANE.

[3 Dill. 303.] [1]

Circuit Court, D. Nebraska. July, 1874.[2]

TAXATION—RAILROAD LAND GRANT—PLEADING IN EQUITY—MULTIFARIOUSNESS—INADEQUATE REMEDY AT LAW.

1. Lands for which a patent has issued to the Union Pacific Railroad Company are taxable by the authorities of the state of Nebraska, notwithstanding the proviso in section 3 of the act of July 1, 1862 (12 Stat. 489), which subjects lands not sold or disposed of by the company within three years from the completion of the road to settlement and pre-emption at $1.25 per acre. Case in judgment distinguished from Kansas Pac. R. Co. v. Prescott, 16 Wall. [83 U. S.] 603.

[Cited in Hunnewell v. Burlington & M. R. R. Co., Case No. 6,879.]

2. Said proviso construed and the respective rights of the company and persons proposing to settle on and pre-empt the lands of the company stated.

3. A bill by the railroad company joining as defendants the various counties through which this railroad runs, is not multifarious where the question on which the case turns is common to all, and the counties are agencies of the state as to that part of the taxes which they must pay into the state treasury.

[Cited in Northern Pac. R. Co. v. Walker, 47 Fed. 682.]

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
2 [Affirmed in 22 Wall. (89 U. S.) 444.]

4. Where in addition to the illegality of the tax, the bill shows that if not enjoined a multiplicity of suits will arise: and a cloud be cast upon the owner's title, and that he has no adequate remedy at law, it presents a case of equity cognizance.

This is a suit brought by complainant to restrain the several county treasurers, in which the lands granted by the United States, in aid of the construction of its railroad, by the acts of congress July 1, 1862, and July 2, 1864 (12 Stat. 489; 13 Stat. 356), are situated, from advertising and selling the same in satisfaction of state, county. and school taxes, levied thereon for the year 1872. and becoming due. and delinquent May 1, 1873. The bill alleges in substance the incorporation of the company, its acceptance of the acts of incorporation, the fixing the eastern terminus, the approval of the route, and the construction and operation of the road to its western terminus, and the examination and acceptance by commissioners appointed by the president; that, thereafter, suggestions having been made that the road was not built in full compliance with the law, under authority of a joint resolution of congress of April 10, 1869, the secretary of the interior appointed a commission consisting of five eminent citizens of the United States, to examine and report whether the road was completed in all respects as required by law; that said commission made such examination, and on the 30th of October, 1869, reported that a further expenditure of $1,586,100 would be necessary for that purpose, and that thereupon the secretary of the interior suspended the issue of patents to granted lands; that the whole of said work has not been accepted by the government as completed; and that the company is the owner of the lands derived from the grant contained in the acts of congress aforesaid, situated in the several counties and described in the several schedules to the bill, having never disposed of the same by way of mortgages. The bill also alleges the assessment and levy, by the proper authorities, of state, county, school and other taxes in the respective counties, in amount $104,180.51, and that the several treasurers of the several counties are proceeding; under warrants issued for that purpose, to advertise and sell said lands in satisfaction of said taxes (as well as by seizure of the cars, locomotives, and trains of complainant); that such sale and seizure will result in a multiplicity of suits and irreparable injury, for which no adequate legal remedy exists; and that the value of the lands situated in each county exceeds the sum of $500. No question is made upon the regularity of the proceedings in assessing, levying, or enforcing the tax. The bill further alleges that all lands situated within the ten miles limit have been selected and listed and certified to the company by the commissioner of the general land office, and the land office fees required upon the entry thereof, paid by the company; but that

the cost of surveying the same has not been paid; that the lands situated outside the ten miles limit have neither been selected nor certified to, nor the land office or surveying fees paid by the company; that the amount of such taxes so sought to be collected, which are levied for state purposes, and will be paid to the state, if collected, is $17,711.17. It is thereupon claimed that, under the provisions of section 3, Act July 1, 1862, and section 21, Act July 2, 1864, the lands are not subject to state taxation, and injunction is invoked to restrain the treasurers from proceeding to collect. A temporary injunction being granted, at the November (1873) term [Case No. 14,381] the case was heard upon general demurrer and the demurrer overruled.

The answer. filed January 5, 1874, admits most of the allegations of the bill, but denies that the secretary of the interior has suspended the issue of all patents, and alleges the issue of patents to certain of the lands in controversy; alleges the making of a mortgage by the company of said lands, in 1867, claiming that such mortgage is a disposal thereof, within the meaning of section 3, act of July 1, 1862; denies that land office and surveying fees have not been paid as alleged in the bill; denies that the road was not accepted. as completed, by the United States in 1869, and insists that the question of exemption of said lands from taxation is not common, and the same in respect to each and all the said defendants as alleged in the bill, and that the bill is therefore multifarious. The answer also alleges that the lands in controversy had been surveyed in 1869; that since 1865 the complainant has exercised ownership over the same by advertising and offering the same for sale. and that they are treated by the government as private property. Replication being filed and proofs taken, the case now comes on for final hearing. As to the status of the lands, the evidence taken by the defendant shows (nor is it denied by the complainant) that, at the date of the assessment and levy of the tax in question, the lands in controversy had been surveyed. appraised, offered for sale. and mortgaged. It also appears from the proofs that of the lands situated within the ten miles limit, every alternate odd section to which the company claimed to be entitled had been patented previous to the assessment and levy of the tax; and that the residue of the grants within like limits was unpatented, and that the costs of surveying had not been paid on any lands situated within the ten miles limit, whether patented or unpatented, because not required by the interior department. In respect to the lands situated between the ten and twenty miles limits, it appears from the proofs that they had all been selected, listed, certified, and the land office fees and cost of surveying paid, and every alternate odd section of those claimed by the company patented—the resi-

.due being unpatented. Upon the report of the committee of "eminent citizens" under the joint resolution of April 10th, 1869, that $1,586,000 be required for supplying deficiencies in the road, Mr. Cox, the secretary of the interior, November 3d, 1869, to indemnify the government, ordered that only one-half the lands to which the company would otherwise be entitled should be patented, and the patents for the rest be suspended until further directions from the department. He directed patents to issue beginning at Omaha and working westward for the odd numbered sections 1, 5, 9, etc., and that patents for sections 3, 7, etc., be not issued until further orders. In February, 1871, a patent issued to the company under this order for about 640,000 acres of land, the department refusing to issue a patent for the other half. In February, 1874, Mr. Delano, then secretary of the interior, refused to rescind the order of his predecessor, and so patents for one-half of the company's land are still withheld as security for the completion of its road, and matters reported deficient or not up to the required standard.

A. J. Poppleton and E. Wakely, for plaintiff.

Clinton Briggs, J. C. Cowin, and others, for defendants.

DILLON, Circuit Judge. The railroad company claims that the lands upon which the state authorities have levied taxes for the year 1872, are not subject to taxation for two reasons: one based upon a provision in section 3 of the act of July 1st, 1862, and the other of July 2d, 1864. These will be noticed in their order.

Section 3 of the act of 1862, is the one which makes the grant of land to the company within a specified distance of its line of road, and it concludes with this provision: "And all such lands so granted by this section, which shall not be sold or disposed of by the company within three years after the entire road shall be completed, shall be subject to settlement and pre-emption like other lands, at a price not exceeding $1.25 per acre, to be paid to the company."

Section 4 directs patents to issue for lands on each side of the road from time to time on the completion of sections of forty (afterwards reduced to twenty) consecutive miles, which patents it is enacted shall "convey the right and title to said lands to said company."

Section 21 of the amendatory act of 1864 provides "that before any land granted shall be conveyed to the company * * there shall first be paid into the treasury of the United States, the cost of surveying, selecting, and conveying the same," etc.

From the bill and the proofs, it appears that the work of constructing the road was commenced in 1865, that the road was completed and accepted from time to time in sections of forty and twenty miles, and that the entire road was completed by May 10th, 1869, and has since that time been in constant use and operation.

In 1867 the company "for the purpose of raising money to aid in the construction of its railroad," mortgaged its land grant to secure the payment of bonds for about ten millions of dollars. This mortgage is still in full force.

Upon this legislation and upon this state of facts, the first ground taken by the company upon which it insists that the state of Nebraska has no right to tax any of its lands, whether patented or not patented, is, that by the provision in section three above mentioned, these lands are "subject to settlement and pre-emption like other public lands, at a price not exceeding $1.25 per acre, to be paid to the company." In support of this proposition the counsel for the company rely upon the case of Kansas Pac. R. Co. v. Prescott, 16 Wall. [83 U. S.] 603.

I confess to some difficulty in distinguishing that case from the one now before the court; but upon the best consideration I have been able to give to the subject, I am of opinion that that case does not control this one, so far at least as regards the lands to which this company holds the patent of the United States.

There are two elements in that case which, in material respects, distinguish it from the present one so far as the plaintiff company has received a patent for its lands; the first is, that in that case the taxes were assessed before any patent had been issued; and the second is, that they were assessed at a time when by reason of the non-payment of the costs of surveying, etc., required by section twenty-one of the act of 1864, the company was not entitled to a patent.

· If, in that case, the cost of surveying the land had been paid, and a patent for the land there in question had actually been issued before the taxes were assessed, it would seem that a different result would or might have been reached.

It is not my purpose to discuss at length the respective rights of the general government and of the railroad company in the lands, after the lapse of three years from the completion of the road, nor whether a mortgage of the lands is such a "disposition" of them as would defeat the right of settlement or pre-emption. The proofs show that the company has dealt with these lands, and is now dealing with them as if they were in all respects their absolute property. They are advertising and selling them at their own prices and upon their own terms, and they do not recognize the rights of the public to settle upon and pre-empt them, and to buy them at $1.25 per acre. On the other hand, neither congress nor the interior department has taken any steps to subject these lands to settlement and pre-

emption, and the public are denied the right to the benefit of the privilege or reservation in their favor.

I am inclined to consider the true meaning and effect of the provision in question to be this: While the road is being constructed and for a period of three years after the completion of the entire line, the company may sell or dispose of the lands at their own price, and they are subject during this period to no right of settlement or pre-emption; after three years have elapsed, the company may still sell or dispose of their lands in good faith, but as to any lands not thus sold or disposed of, there is a right on the part of the public to settle upon and pre-empt them in the same manner as if they were part of the public domain—the price not exceeding $1.25 per acre, being payable to the company instead of the government.

This view harmonizes and gives effect to all the different provisions of the act. The right of the company to the lands granted is a substantial one. The title passes to the company. Patents are required to be issued to the company conveying the "right and title to the lands" During the three years the right of the company to sell at its own price is clear, and has not been denied. After the three years the title does not change. The company still owns the lands, but "subject" to the right of any person possessing the qualifications of a pre-emptor, to settle upon them and obtain them as a pre-emptor may obtain other public lands. But this right does not prevent the company from selling lands in good faith to persons who may not wish to pre-empt or occupy them. The rights intended to be given to the public are secured and the evils apprehended from the company having a monopoly of such a vast amount of lands, are avoided by this construction—which recognizes the right of the actual settler to pre-empt the lands, and thus destroy the monopoly, and also the right of the company actually and in good faith, to sell any tract not at the time pre-empted, and which, if sold, likewise destroys to that extent the monopoly, since a sale of lands is usually the first step towards their settlement and cultivation.

If this be a correct view of section three of the act of 1862, it results that the lands of the company so far as they are patented, are subject to taxation by the authority of the state, and this privilege reserved in favor of the actual settler, and of which he may never wish to avail himself, which is contingent in its nature and subject to be defeated by a sale of the lands by the company, is not inconsistent with and will not defeat the rightful authority of the state to tax the lands.

As to the lands which have been patented to the company, I am of the opinion that it is the substantial owner, and that equity should not relieve it from taxation in respect thereto, because it may be compelled to sell particular tracts here and there to actual settlers at $1.25 an acre.

The other ground of exemption, in view of the decision in the Prescott Case, may be disposed of briefly. Upon the proofs in this case, which on some points are indefinite, I am of opinion that lands which have not been patented, either because the costs of surveying required by section twenty-one of the act of 1864 have not been paid, or because patents have been withheld by the interior department as indemnity to make good the deficiencies in the construction of the road, are not taxable, and to this extent the injunction will be continued in force. But as to all lands which have actually been patented to the company the injunction will be dissolved. It is true that as respects patented lands within the ten miles limit, Mr. Davis, the land agent of the company, states that the surveying fees have not been paid, but he also states that the reason why they were not paid was that the interior department did not require it.

It does not appear that there are any lands not patented which have been fully earned and set apart to the company upon which all fees have been paid, and for which the patents are not retained by the government for its own security, and therefore for all practical purposes, I hold that the lands in this case may, upon the proofs before the court, be divided into two classes: 1st, those which are taxable; 2d, those which have not been patented and which are not shown to be taxable.

Without stating at length the reasons for the view, my opinion is that the bill is not multifarious by reason of the joinder of the various counties through which the road runs, as the question on which the case turns is common to all, and the counties are in fact the agencies of the state as to that part of the taxes which they must pay into the state treasury.

I am also of the opinion that the bill presents a case of equitable cognizance so far as the tax sought to be enjoined is illegal, because of the multiplicity of suits which the sale of many hundred separate tracts of land would engender; because of the cloud which, under the legislation of Nebraska, would be cast upon the title of the lands by a tax sale and deed; because so far as the taxes going to the state are concerned, there is no remedy at law to recover them back (First Nat. Bank of Omaha v. Douglas Co. [Case No. 4,809], May term, 1873, decided by Mr. Justice Miller); and because the threatened seizure of the trains of the company in a new and remote region, causing delay and injury, should not be permitted in order to enforce an illegal tax. Let a decree be drawn dismissing the bill as to all lands embraced in the company's patent of February 23, 1871, and making the injunc-

tion perpetual as to the lands which have not been patented to the company. Decree accordingly.

NOTE. The decree in the foregoing case was rendered in July, 1874, and cross-appeals taken. By reason of its character and importance the case was advanced by the supreme court and a decree rendered January, 1875, affirming the decree of the circuit court both as to the patented lands and the lands not patented. [22 Wall. (89 U. S.) 444.] The following propositions as stated by Mr. Justice Miller, were ruled by the supreme court:

1. Kansas Pac. R. Co. v. Prescott, 16 Wall. [83 U. S.] 603, modified and overruled so far as it asserts the contingent right of pre-emption in lands granted to the Pacific Railroad Company to constitute an exemption of those lands from state taxation.

2. But affirmed so far as it holds that lands on which the costs of survey have not been paid, and for which the United States have not issued a patent to the company, are exempt from state taxation.

3. But where the government has issued the patent the lands are taxable, whether payment of those costs have been made to the United States or not.