NORTHERN PAC. R. Co. *v.* WALKER, County Auditor, *et al.*

(*Circuit Court, D. North Dakota.*)

1. TAXATION—WHEN RAILROAD GRANTS TAXABLE.

Act Cong. July 2, 1864, § 3, providing "that there be and is hereby granted to the Northern Pacific Railroad Company, its successors and assigns, * * * every alternate section of public land not mineral, designated by odd numbers; * * * provided, further, that all mineral lands be and the same are hereby excluded from the operation of this act," etc., immediately passed the title to all such lands not specifically reserved, and the grant attached to the specific sections as soon as they became capable of identification by the definite location of the road; and therefore, after the road was located and built, and a plat of its route filed in the office of the commissioner of the general land-office, and the lands were surveyed by government surveyors, and by them returned as not known mineral lands at the date of the grant, they became subject to taxation to the company, notwithstanding no patents had yet been issued, and that the proper government officials refused to issue patents until further satisfied that the lands were not mineral.

2. SAME—MINERAL LANDS.

The future discovery of minerals in such lands will not divest the company's title, but will inure entirely to its benefit.

3. SAME—UNEQUAL TAXATION—CONSTITUTIONAL LAW.

Act Dak. T. March 7, 1889, provides that in lieu of all other taxes upon any railroads, or the equipment, appurtenances, or appendages thereof, "or upon other property situated in this territory belonging to the corporation owning or operating such railroads," there shall hereafter be paid by companies accepting the act, for the first five years, 3 per centum annually of the gross earnings arising from the operation of the road, and thereafter 2 per centum annually of such earnings. *Held,* that in so far as the act exempts from taxation lands owned by a railroad corporation which are not essential to the discharge of its functions as a common carrier, and which are merely held for sale, it is in conflict with the organic act, (Rev. St. U. S. § 1925,) which provides that the legislative assembly "shall pass no law impairing the rights of private property, nor make any discrimination in taxing different kinds of property; but all property subject to taxation shall be taxed in proportion to its value," and also with the fourteenth amendment to the constitution of the United States.

4. SAME—BILL TO ENJOIN COLLECTION.

A bill to enjoin the collection of taxes on such lands on the ground that they are exempt from taxation under this act will be dismissed for want of equity when the company does not aver payment or tender of the 3 per centum tax on gross earnings.

5. SAME—PARTIES TO BILL—MULTIFARIOUSNESS.

A bill by the Northern Pacific Railroad Company to enjoin the payment of taxes for 1889 upon lands granted to it by Act Cong. July 2, 1864, is not multifarious because brought against the tax collectors of 12 different counties for the lands within their respective jurisdictions, since the questions of law and fact involved are common to all the defendants, and the relief prayed is the same.

In Equity. Suit to enjoin collection of taxes. On demurrer to bill.

*John C. Bullitt, Jr.,* and *Fred. M. Dudley,* for plaintiff.

*Edgar W. Camp, E. C. Rice, Wm. F. Cochrane, Marion Conklin,* and *Herman Winterer,* for defendants.

Before CALDWELL and THOMAS, JJ.

CALDWELL, J. This action is brought by the complainant against the county auditors of 12 counties in North Dakota to perpetually enjoin them from collecting the taxes levied for the year 1889 upon that portion of the place lands granted to the complainant by the act of congress of July 2, 1864, situated in said counties. On filing the bill a temporary restraining order was granted. The cause is now before the court upon a demurrer to the bill.

1. The bill is not multifarious because brought against the tax collectors of 12 different counties. The questions of law and fact involved are common to all of the defendants, and the same relief is prayed against each of them. This community of interest in the questions at issue, and the relief sought, make it proper to join all the defendants in one suit. It avoids a multiplicity of suits without imposing on any one of the defendants needless or oppressive costs or delay. Story, Eq. Pl. §§ 285, 285a, 534; *Railway Co.* v. *McShane*, 3 Dill. 303, 22 Wall. 444. The rule is now settled that a bill will be sustained "by a single plaintiff against a numerous body of persons to establish his own right, and defeat all their opposing claims, where the claims of those persons are legally separate, arose at different times and from separate sources, and are common only with respect to their interests in the questions involved, and in the kind of relief to be obtained by or against each." 1 Pom. Eq. Jur. § 274. The rule goes beyond what is necessary to sustain the present bill; for in this case the defendants' claims not only rest on the same law and facts, but arose at the same time and from the same source.

2. The first ground upon which the injunction is asked, is that the lands are not taxable. It is said they are not taxable because no patent has been issued to the company for them, and that the commissioner of the general land-office, under the directions of the secretary of the interior, has required the railroad company to file in the office of the commissioner of the general land-office, or in the office of the United States land district in which the lands are situated, an affidavit, made by some person acquainted with the character of the lands, showing that they are non-mineral, and refuses to certify the lands for patent until such affidavit is filed, and that the secretary of the interior and the president have refused to certify or patent the lands, claiming that they are unable to ascertain or determine whether or not the lands are mineral in character.

The third section of the act making the grant reads as follows:

"That there be and is hereby granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe transportation of the mails, troops, munitions of war, and public stores over the route of said railway, every alternate section of public land not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of said railroad line as said company may adopt through the territories of the United States, and ten alternate sections of land per mile on each side of said railroad where it passes through any state, and whenever on the line thereof the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is definitely fixed and a plat thereof filed in the office of the commissioner of the general land-office: * * * provided, further, that all mineral lands be and the same are hereby excluded from the operations of this act, and in lieu thereof a like quantity of unoccupied and unappropriated agricultural lands in odd-numbered sections nearest to the line of said road may be selected as above provided."

The supreme court has decided that by force of the provisions of this section the title to all lands within the terms of the grant, and not re-

served from it at the time of the definite location of the grant, passed to the railroad company, and that no patent is necessary to invest the company with the title to such lands. Construing the grant, the court say:

"The language of the statute is 'that there be and hereby is granted' to the company every alternate section of the lands designated, which implies that the property itself is passed, not any special or limited interest in it. The words also import a transfer of a present title, not a promise to transfer one in the future. The route not being at the time determined, the grant was in the nature of a float, and the title did not attach to any specific sections until they were capable of identification; but when once identified the title attached to them as of the date of the grant, except as to such sections as were specifically reserved." *St. Paul & P. R. Co.* v. *Northern Pac. R. Co.*, 139 U. S. 1, 11 Sup. Ct. Rep. 389.

The averments of the bill as to the definite location of the road, and the survey and identification of the lands, are full and explicit. The bill alleges that the railroad company definitely fixed the line of its railroad, and filed a plat thereof in the office of the commissioner of the general land-office, on May 26, 1873, and July 20, 1880; that the lands mentioned in the bill are the odd-numbered sections within the limits of the grant, on either side of the line of the railroad so definitely fixed; that the railroad has been built and accepted by the government, and is now being operated by the company; that at the date the line of the road was definitely fixed, and a plat thereof filed in the office of the commissioner of the general land-office, the lands mentioned were public lands, to which the United States had full title, and that they were upon the records of the district land-office, and of the office of the commissioner of the general land-office, free from pre-emption or other claims or rights. It is further averred that the lands have been surveyed by United States surveyors, and by them reported to be non-mineral lands, and agricultural in their character, and that they were not on July 2, 1864, or May 26, 1873, or July 20, 1880, known mineral lands, and no mineral, other than coal or iron, has ever been discovered upon or in them. It is also averred that in compliance with the directions of the secretary of the interior the railroad company has filed lists of said lands in the district land-offices, claiming them under the act of congress, and that these lists were approved by the district land-officers, and transmitted to the commissioner of the general land-office. Assuming these averments to be true, the lands are within the terms of the grant, and the title to them has vested in the company. The reports of the deputy-surveyors of the United States, that the lands were agricultural and not mineral lands, have the force of depositions, and are *prima facie* evidence, at least, of the character of the lands. *Kirby* v. *Lewis*, 39 Fed. Rep. 75, and cases cited; *Cowell* v. *Lammers*, 10 Sawy. 253, 21 Fed. Rep. 200.

But it is said that mineral may be discovered in some of these lands at some future time, and that when such discovery is made it will then be apparent that such lands did not pass by the grant. Mineral lands are undoubtedly excluded from the grant; but there must be a time and mode of determining, once for all, what lands are mineral. The determination of this question cannot be left to the accident of future ages.

The mineral lands excluded from the operation of the act are the lands known to be such at the time the company acquired its title. *Davis* v. *Wiebbold*, 139 U. S. 507, 11 Sup. Ct. Rep. 628; *Railroad Co.* v. *Barden*, 46 Fed. Rep. 592. No mineral has been discovered in any of these lands to this day. The absolute title to the lands has, therefore, vested in the company. The discovery of mineral in any of these lands in the future will not redound to the prejudice of the company, but to its profit, for it will own the mineral as well as the land.

3. The second ground upon which the injunction is asked rests upon an act of the territorial legislature approved March 7, 1889, the material provisions of which, having relation to this case, are as follows:

"In lieu of any and all other taxes upon any railroads, except railroads operated by horse-power, within this territory, or upon the equipment, appurtenances, or appendages thereof, or upon any other property situated in this territory belonging to the corporation owning or operating such railroads, upon the capital stock or business transactions of said railroad company there shall hereafter be paid into the treasury of this territory an amount equal to a percentage of all the gross earnings of the corporation owning or operating such railroad, arising from the operating of such railroad, as shall be situated within this territory, both upon territorial and interstate traffic, in case the railroad company owning or operating such line shall accept and become subject to this act as hereinafter provided. Every such railroad corporation, or person owning or operating, or that may hereafter own or operate, any line of railroad in this territory which shall have accepted this act, shall pay to said treasurer each year, 'for the first five years' after the approval of this act, an amount equal to three per centum of such gross earnings, 'and for and in each and every year after the expiration of such five years an amount equal to two per cent. of said gross earnings,' and the payment of such amount annually as aforesaid shall be and is in full of any and all other taxation and assessment whatever upon the property aforesaid. Said payments shall be made, except as hereinafter provided, one-half on or before the 15th day of February, and one-half on or before the 1st day of August of each year."

The bill alleges the acceptance of the act by the company in the time and mode required. This act is relied on as exempting the lands of the company from taxation. It is conceded the language of the act is broad enough for the purpose; but it is contended that so much of the act as attempts to do this is in conflict with the organic act of the territory, and the fourteenth amendment to the constitution of the United States, and void. The organic act provides that the legislative assembly of the territory "shall not pass any law impairing the rights of private property, nor make any discrimination in taxing different kinds of property, but all property subject to taxation shall be taxed in proportion to its value." Land is made one of the subjects of taxation under the revenue laws of the territory. Conceding that under the organic act the legislature may select the subjects of taxation, and conceding that it may classify property for purposes of taxation, and that the different classes of property may be valued or taxed by different methods; assuming, but not deciding, that it was competent for the legislature to provide for taxing railroads by a tax on their gross earnings,—and the question remains, whether the act we are considering is not in excess of the lawful exercise of any

of these powers under the organic act. At the threshold of the discussion of this question it is essential to determine the character, condition, and use of the property claimed to be exempt from taxation under the act. The property of this railroad company is not limited to its railroad. It still owns many thousands of acres of its land grant. "Railroad property" and "the property of a railroad company" are not equivalent terms. The term "railroad property" is commonly understood to mean the property which is essential to a railroad company to enable it to discharge its functions and duties as a common carrier by rail. It includes the road-bed, right of way, tracks, bridges, stations, rolling-stock, and such like property. On the other hand, lands owned and held for sale, or other disposition, for profit, and in no way connected with the use or operation of the railroad, are not railroad property in the sense mentioned, but are property of the railroad company independently of its functions and duties as a common carrier. The railroad company, as owner of the railroad, owes many duties to the public in reference to that property and its use. It must keep its road in operation, carry all freight and passengers offering, and must perform this service without partiality or discrimination, and for a reasonable compensation. It owes other duties to the public as owner of the railroad, which need not be enumerated. But as owner of these lands it owes no legal duty to the public in respect of them, except to pay the taxes on them. It may hold lease, or sell them; it may sell them for the highest price it can obtain, or may decline to sell, lease, or improve them on any terms. Its relation to these lands in the respects mentioned is the same that a natural person sustains to the lands he owns. So far as relates to its lands, it is a landed proprietor, on the same footing with any other proprietor of lands. The money derived from the lease or sale of these lands, as well as the unearned increments accruing by reason of their continued holding and the improvement of the surrounding lands, does not enter into the gross earnings of the railroad company, upon which the tax is levied. The earnings upon which the tax is assessed are by the terms of the act restricted to "the gross earnings * * * arising from the operating of such railroad." It will thus be seen that, while the plaintiff's railroad is taxed on its gross earnings, the lands belonging to the company are not taxed at all. They are neither taxed upon their value nor the income derived from them. The plaintiff is not in the position of a company whose charter exempts its property from taxation. It accepted a grant of taxable lands. In the matter of taxation there is no difference between the lands owned by this company and lands owned by any other corporation or by a natural person. Lands, by whomsoever owned, are subject to taxation, and must be taxed by a uniform rule according to their value. This is the rule of the organic act, and it must be observed. But it is said the legislature, in the exercise of its powers to select the subjects of taxation and classify property for taxation, "may place railroads in a class by themselves, and tax them and their property different from other persons; the only limitation being that all railroads in the same class must be taxed alike." But, as before stated, con-

ceding that under the organic act railroads may be classed by themselves for the purposes of taxation, and taxed by a method applicable to them alone, still that classification and method of taxation must be restricted to what is railroad property. It cannot be extended to lands which have no relation to the railroad, or its use or operation. The franchises of railroad companies, and their earnings, and railroad property as before defined, may well be classed by themselves for purposes of taxation, and taxed by a different method or rule from that applied to other property. This may be done because it is unlike other property. It is the difference in the character, condition, and use of this kind of property from other property that justifies the difference in classification and the mode of taxation. Property of the same kind, in the same condition, and used for the same purpose, must be taxed by a uniform rule without regard to its ownership. The legislature having selected land as a subject of taxation, all lands under the same conditions are subject to be taxed. The law for the taxation of lands must operate equally and uniformly upon all lands, the condition and use of which are similar. While property may be classified for the purposes of taxation, between the subjects of taxation in the same class there must be equality. Property of the same kind, and in the same condition, and used for the same purpose, cannot be divided into different classes for purposes of taxation, and taxed by a different rule, because it belongs to different owners. But this is precisely what the act under consideration seeks to do. It exempts the lands of the company from taxation simply and solely because they belong to the company, and taxes all other lands by a uniform rule according to their value. It was not competent for the legislature, either under the organic act or the fourteenth amendment of the constitution of the United States, to classify the lands in the territory, for purposes of taxation, into lands owned by railroad companies and lands owned by all other persons, and declare that the former should not and the latter should be taxed. The prohibition in the organic act against making "any discrimination in taxing different kinds of property" necessarily implies a prohibition against any discrimination in taxing the same kind of property. It establishes the just and reasonable rule, which has become fundamental in our American system of taxation, that the burdens of taxation shall fall equally upon all owners of the same kind of property. If the act in question is valid, then the wholesome and just provisions of the organic act, intended to secure equality in the burdens of taxation, and to prevent discrimination and oppression, are meaningless.

4. But if the act of the legislature was valid the plaintiff's bill would be without any equity or merit. As a reason for enjoining the collection of the taxes on its lands, the plaintiff says the territory agreed by this act to exempt its lands from taxation in consideration of the payment into the territorial treasury of a certain per cent. of the gross earnings of the plaintiff's railroad. But the bill does not allege the payment or tender of the tax on the gross earnings, nor bring the money into court, nor aver a willingness to pay. On the contrary, it would seem to be the purpose of the plaintiff to resist the payment of the gross-

earnings tax, also. That tax, as well as the tax on the lands of the company, is long overdue. Upon these facts the plaintiff has no standing in a court of equity to enjoin the collection of either tax. When the company seeks to enjoin the collection of the taxes on its lands upon the ground that a tax which it has agreed to pay on its gross earnings has the effect to exempt its lands from taxation, it must aver the payment or tender of such gross-earnings tax before a court of equity will consider the question of the legality of the tax upon its lands. It cannot, while refusing to comply with the alleged contract on its own part, ask a court of equity to enforce it against the state. It cannot have the exemption without first paying the consideration. That the company is liable to pay the taxes on its gross earnings, or the taxes upon its lands, or both, cannot be disputed; but it has not paid, and does not propose to pay, either tax.

The rules that obtain in the federal courts in cases where it is sought to enjoin the collection of the public taxes are well settled. They will be found in *State Railroad Tax Cases,* 92 U. S. 575, and *Pacific Express Co.* v. *Seibert,* 44 Fed. Rep. 310, and cases there cited, and need not be here repeated. The demurrer to the bill is sustained, the temporary injunction dissolved, and the bill dismissed, for want of equity, at the plaintiff's costs.