# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## FALL TERM, 1913

### City of Lancaster v. Pope.

(Decided November 19, 1913).

## Appeal from Garrard Circuit Court.

1. Taxation—Injunction.—Injunction will lie to prevent the collection of an illegal tax upon personalty.

2. Taxation—When Personal Property Not Liable to—Residence.— Where a farmer, living in the country beyond the city boundary, sold his farm, and pending his purchase of another farm a year later stored his household goods with a son, who also lived in the country, and spent the intervening year in visiting his children living at different points in Kentucky and Tennessee, including a daughter living in the city of Lancaster, without intending to become a resident of the city, the farmer was not a resident of the city of Lancaster, and his personal property was not taxable therein.

3. Taxation—Suit to Enjoin Municipal Tax—Bond.—The failure of the court in its final judgment in a suit enjoining the collection of a municipal tax, to require the plaintiff to give a bond to the municipality to perform the final judgment of the court, is not error.

4. Taxation—Judgment Enjoining Collection of Illegal Tax—Certainty of Judgment—Validity.—Where the final judgment enjoining the collection of an illegal tax failed to specify the amount of the tax enjoined, but in general terms enjoined the collecting of any assessment against the plaintiff by the defendant, and the municipality claimed no other tax against the plaintiff, the judgment was sufficiently certain to make it valid.

WILLIAM HERNDON and R. H. TOMLINSON for appellant.

J. E. ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee, Pope, brought this action to enjoin the city of Lancaster and its town marshal from levying on his personal property to enforce the collection of $61.50, claimed by the city to be due it from Pope as taxes for the year 1911.

The tax for the year 1911 was levied as of September 15th, 1910, and Pope claimed he was not a resident of Lancaster on September 15th, 1910, or during the year 1911.

Upon final hearing, the court granted the relief prayed, and perpetually enjoined the city from proceeding to collect the tax; and from that judgment the city of Lancaster prosecutes this appeal.

Four errors are assigned; (1) that injunction does not lie to prevent the collection of an illegal tax upon personalty; (2) that the court erred in not adjudging that Pope was a resident of the city of Lancaster; (3) that the final judgment did not require Pope to give a bond; and (4) that the judgment does not enjoin the collection of any specific amount.

The property was not assessed against Pope by the city assessor; but the board of supervisors for the city of Lancaster, which met in December, 1910, having summoned Pope to appear before it, assessed his personal property at $8,000.00, and also imposed upon him a poll tax of $1.50, to all of which he protested.

1. Can the collection of an illegal tax upon personalty be enjoined?

Cooley on Taxation, page 1415, lays down the general rule as follows:

"When a tax as assessed is only a personal charge against the party taxed, or against his personal property, it is difficult in most cases to suggest any ground of equitable jurisdiction. Presumptively the remedy at law is adequate. If the tax is illegal and the party makes payment, he is entitled to recover back the amount. The case does not differ in this regard from any other case in which a party is compelled to pay an illegal demand; the illegality alone affords no ground for equitable interference, and the proceedings to enforce the tax by distress and sale can give none, as these only constitute an ordinary trespass." *    *    *

But, on page 1418, Cooley further says:

"It must be conceded, however, that the courts in some States go further, and sustain the interposition of

equity, particularly by injunction, in all cases of illegal taxation; proceeding, in doing so, upon the ground, that when officers or individuals have no legal authority to lay a tax, and they assume the right; or when persons are invested with the legal authority to lay a tax for a specific purpose, but instead of exercising that power they proceed to impose a tax which the law has not authorized, or lay it for fraudulent or unauthorized purposes; then a court of equity will interpose to afford preventive relief, by restraining the exercise of powers perverted to fraudulent or oppressive purposes." * * *

Kentucky belongs to this last class of States.

And, in speaking of this jurisdiction, and quoting from section 369, of High on Injunctions, Cooley on page 1419, further says:

"The equitable jurisdiction in these cases has grown up somewhat imperceptibly, and perhaps owes its origin as much to an idea that municipal officers, in the authority which affects the property of the people, are exercising a trust over which equity may properly assume a supervision, as to any supposed fraud, actual or constructive, which may be involved in their illegal action. In the case of municipal assessments 'courts of equity have been inclined,' to use the words of an eminent writer, 'to relax somewhat the stringency of the rule of non-interference as applied to the collection of State taxes.'"

In 37 Cyc., 1259, the rule is stated as follows:

"Where a tax is illegal, because levied under an unconstitutional statute, or for an unlawful purpose, or by persons having no authority whatever to make the levy, or assessed on persons or property not subject to taxation, it is the doctrine of many cases that this is sufficient ground to justify a court of equity in enjoining proceedings for its collection, unless prohibited by statute."

In support of this text decisions are cited from Alabama, Arkansas, Dakota, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Mississippi, Missouri, Nebraska, North Carolina, Ohio, Oklahoma, Oregon, Rhode Island, Texas, Virginia, Washington, West Virginia, Wisconsin, Wyoming and the Federal Courts. See Wright v. L. & N. R. R., 54 C. C. A., 679, which was reversed on other grounds in 195 U. S., 219.

In those jurisdictions which allow the remedy by injunction to prevent the collection of an illegal tax upon realty, but deny it when applied to a like tax upon personalty, the rule rests upon the well established equitable jurisdiction of removing or preventing a cloud upon title, and that where personalty is taken the owner has an adequate remedy at law, in damages.

Generally speaking, to obtain equitable relief against the collection of an illegal tax affecting personalty, the plaintiff must show special circumstances as in any other case of threatened trespass upon his property. Thus, an injunction will be granted, in such a case to prevent the serious interruption of plaintiff's business. Union Pacific Railroad Co. v. McShane, 3 Dill., 303; Oliver v. Memphis & Little Rock R. R. Co., 30 Ark., 128; Lenawee County Savings Bank v. City of Adrian, 66 Mich., 273; City of Detroit v. Wayne, 127 Mich., 604; Mobile & Ohio R. R. Co. v. Moseley, 52 Miss., 127.

Likewise, injunction will lie to avoid repeated actions against the plaintiff who has already established the invalidity of the tax at law. Bank of Kentucky v. Stone, 88 Fed., 383, 392.

And, where the remedy by action to recover taxes lies only where they have been paid under duress of a restraint, as in Kentucky, and the officers could avoid such remedy by bringing an action at law instead of distraining, injunction will lie. In such cases the remedy at law is inadequate. Bank of Kentucky v. Stone, *supra.*

It is upon this theory, no doubt, that it has long been recognized in Kentucky, as well as in Georgia, Illinois, Indiana, Iowa, Nebraska, Oklahoma and Pennsylvania, that the illegality of a tax is regarded as a sufficient reason for enjoining its collection at the suit of a single plaintiff, whether the tax be upon personalty or realty, and irrespective of any question of cloud upon title. Gates v. Barrett, 79 Ky., 298; Baldwin v. Shine, 84 Ky., 502; Norman v. Boaz, 85 Ky., 557; Baldwin v. Hewitt, 88 Ky., 673; Negley v. Henderson Bridge Co., 107 Ky., 414; Richardson v. Boske, Sheriff, 111 Ky., 893; Johnson v. Boske, Sheriff, 23 Ky. L. R., 1845; 66 S. W., 400; Mt. Sterling Oil & Gas Co., v. Ratliff, Sheriff, 127 Ky., 1; Fiscal Court v. F. & A. Cox Co., 132 Ky., 738; Albany Bottling Co. v. Watson, 103 Ga., 503; Siegfried v. Raymond, 190 Ill., 424; Yocum v. Bank, 144 Ind., 275; Montis v. McQuiston, 107 Iowa, 651; Rothwell v. Knox County, 62 Neb., 50; Jones v. Holzapfel (Okla.), 68 Pac., 511;

Arthur v. School District, 164 Pa., 410. Under this rule, therefore, which is well settled in this jurisdiction, if Pope was not liable for the tax, he could enjoin its collection.

2. Upon the issue of residence the proof shows that Pope formerly lived upon a farm in the county, and that his own health and the health of his wife being poor, he rented his farm to a tenant for the year 1909, reserving a portion of the house for the purpose of storing his household goods. In January, 1910, he sold his farm and removed his household effects to the farm of his son, Joe Pope, who also lived in the county. Appellee had several children who lived at different points in Kentucky and Tennessee, one of them being Mrs. Vaughn, a daughter, who resided in Lancaster.

Appellee's wife died in 1909, and from that time until he bought the Perkins farm in 1911, he spent most of his time visiting and living with his children. He testified that when he sold his farm he intended to re-invest and continue farming. Being in bad health, however, he spent several weeks of the year 1910 in a hospital at Lexington. He then visited his son, Lee Pope, at Williamsburg, for several weeks, and was compelled to return to the hospital at Lexington, where he remained until about the 1st of June, when he went to the Springs at Jacksboro, Tennessee, and remained there until about September 1st, 1910. From Jacksboro he returned to Williamsburg, and remained there for several weeks. He states that up to that time he had not been in the city of Lancaster during the year 1910, and that he never resided in Lancaster a day in 1910, prior to September 15th. He declined to vote in the city election, upon the ground that he did not consider himself a resident of the city, and says he never intended to make Lancaster his home.

He says he spent most of the year 1910 endeavoring to find a suitable farm, and in this he is corroborated by Hughes, a real estate agent in Lancaster. He bought a farm from Perkins in 1911, upon which he has since resided. He kept his household goods at the farm of his son, Joe Pope, until he bought and removed to the Perkins farm. Appellee's son, Joe Pope, testifies that his father lived at his house from the time he sold his farm until he bought the Perkins farm; that when he sold his farm he moved his things to Joe's house, and moved them again when he bought the Perkins farm.

From this evidence, which is uncontradicted, we think the chancellor was justified in finding that Pope was not a resident of the city of Lancaster on September 15th, 1910. The fact that he subsequently spent several weeks there visiting his daughter, Mrs. Vaughn, cannot affect the case. Helm's Trustee v. Com., 135 Ky., 392.

3. No bond was executed by the plaintiff when the suit was instituted, because no temporary restraining order was granted. Upon final hearing the court tried the case upon its merits, and granted the injunction, but did not require Pope, the plaintiff, to execute a bond. While appellant claims this was error, it does not cite any authority whatever in support of its contention.

The Code of Practice requires a bond from the plaintiff before a temporary restraining order will be granted; but we have been cited to no provision requiring such a bond when the injunction is granted upon the final hearing.

4. It is further contended, however, that the judgment is erroneous because it fails to specify the amount of the tax which is enjoined, the court having failed to fill up a blank in the judgment, evidently left for inserting therein the amount of the tax bill. The judgment, however, is general in its terms, and enjoins the appellant from levying or collecting any assessment against the plaintiff. As it is not contended that the appellant was claiming any other tax against the plaintiff, it could not have been misled or prejudiced for want of a more definite description of the tax enjoined.

Judgment affirmed.