## Greene, Auditor v. Kentucky Illiteracy Commission.

(Decided June 20, 1919.)

### Appeal from Franklin Circuit Court.

1.   Statutes—Appropriation for Kentucky Illiteracy Commission.— By chapter 53 of the 1918 Session Acts, the legislature appropriated to the Kentucky Illiteracy Commission the sum of $75,000.00, payable in annual installments of $25,000.00 each, out of the state revenues for the three fiscal years ending June 30, 1918, 1919 and 1920, but to be expended by the commission when and as in its discretion should be deemed expedient, in a final effort to complete a single educational endeavor within a single fixed period of time, ending July 1, 1920.

2.  Statutes—Construction—Elimination of Clause.—In the construc-
tion of a statute one clause or part can not be eliminated in favor
of another, arbitrarily or except to give effect to the legislative
intent as expressed by the whole act, and if possible some effect
must be given to every part.

3.  Statutes—Construction.—Thus construed, the words "on or be-
fore" as used in section one of the act in designating the times of
payment by the auditor to the commission, held to mean as re-
quired by the commission, and not as the auditor might elect, on
or before June 30, of each year; while the word "annual" as used
in describing the three separate sums appropriated, is held to
mean an appropriation out of the state's revenues in each of
three succeeding fiscal years, and not that each sum was to be
used separately and only within the year in which payable.

CHARLES H. MORRIS, Attorney General, and D. O. MYATT,
Assistant Attorney General, for appellant.

E. C. O'REAR for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This action is the result of a difference of opinion be-
tween the Auditor of the Commonwealth and the Ken-
tucky Illiteracy Commission, as to whether the act of
the legislature approved March 26, 1918, being chapter
53 of the 1918 Session Acts, and sections 2171c, 1-7 inc.,
vol. 3, Kentucky Statutes, appropriated to the commis-
sion fifty thousand dollars as contended by the former,
or seventy-five thousand dollars, as claimed by the lat-
ter, and held by the circuit court.

Only sections 1 and 5 of the act are involved, but the
title and preamble are referred to in argument as in-
dicative of the legislative intent and purpose as express-
ed in the involved sections, and sections 2, 3 and 4 dis-
close the extent of the authority and discretion vested in
the commission as to the use of the appropriated funds,
so we copy herein the entire act:

"An act for the benefit of the Kentucky Illiteracy
Commission, appropriating money thereto.

"Whereas, the 1910 census of the United States Cen-
sus Bureau shows 208,084 illiterate men and women in
the State of Kentucky, and the Kentucky Illiteracy Com-
mission is reducing that number and attempting to con-
fer upon all the benefits and privileges of education, and

"Whereas, the work of said commission is greatly
handicapped by lack of funds; therefore,

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1. That there be and is hereby appropriated to the Kentucky Illiteracy Commission the sum of twenty-five thousand dollars annually, until June 30th, 1920, and on or before June 30th, 1918, June 30th, 1919, and June 30th, 1920, the auditor of the Commonwealth is directed to draw his warrants for said sum above annually appropriated, upon vouchers or warrants signed by the chairman and secretary of said commission.

"2. The fund thus appropriated shall be expended for county field agents, clerical help and other legitimate expenses as may, in the judgment and discretion of the commission, be necessary, in the efficient and economic methods of teaching illiterate men and women. Provided, however, that no part of the money herein appropriated shall be applied or be used to pay a salary, or any part of a salary, to any member of the Kentucky Illiteracy Commission.

"3. The commission shall have the power to appoint county field agents in as many of the counties of the Commonwealth as it may deem proper for the purposes of furthering its work. It shall be the duty of such field agents so appointed to aid and assist the commission in carrying out the purposes of this act and its general purposes; to do any and all things directed to be done by said commission, and in addition to lend aid and assistance to county superintendents, school boards and trustees in increasing the attendance of pupil children in and upon the common schools of the state, at all times, however, acting under the direction and supervision of the said illiteracy commission.

"4. That the title president of the illiteracy commission be amended to read chairman of the illiteracy commission.

"5. On July 1, 1920, this commission shall cease to exist."

It is agreed this act became effective on June 20, 1918, and it is the contention of the auditor: (1) That the words in section 1 "on or before" have no special significance and mean only that he was required by the act as originally drawn to pay to the commission upon proper vouchers $25,000.00 on June 30th, in 1918, 1919 and 1920, to defray the expenses of the commission, for three sepa-

rate and distinct periods of one year each, but that by the addition of section 5, which was done by amendment in the Senate and thereafter concurred in by the House, after passage by the House of the original draft which contained only sections 1, 2, 3 and 4, the legislature manifested and expressed its intention and purpose of reducing the three annual appropriations of $25,000.00 each to two such.

In support of this construction, it is insisted that since there was no emergency clause attached, the legislature knowing the act would not become effective until 90 days after its approval and having provided for separate annual appropriations payable on June 30, 1918, 1919 and 1920, to cover expenditures for and in the fiscal years either ending or beginning on those dates, must have intended by the amendment terminating the life of the commission on July 1, 1920, to withdraw or withhold one of the three annual appropriations made by section 1; or stated otherwise, that a reduction by the amendment of the time for expenditure to practically two annual periods, necessitates a reduction of annual appropriations to two rather than three as first intended.

We are unable, however, to find in this ingenious argument any sound basis for holding that the legislature by implication did not mean what it clearly said. It definitely appropriated three sums of $25,000.00 or $75,000.00 to the commission, and as clearly shown by the act as a whole, to enable it the better to perform an educational work which had been approved by former legislation and appropriations, and which this act certainly meant to foster and promote, and, it was hoped, to complete within a short time. This intention and purpose is further attested by the fact suggested by counsel for appellant that the legislature defeated every amendment offered, and they were numerous, to reduce the appropriation; which fact convinces us not as contended by the learned attorney general, that by section 5 added by amendment the legislature meant to reduce the appropriation from $75,000.00 to $50,000.00, but rather to speed the completion of the eradication from our state of illiteracy among adults, at least as far as possible, and to fix a period beyond which if not then completed, it was considered impracticable to extend further state aid. Hence we have no doubt of the intention to appropriate $75,000.00 rather than $50,000.00.

2. But the further contention is made that even if so, the use of the word "annual" indicates clearly an intention and purpose to provide separately for the three fiscal years ending June 30th, 1918, 1919 and 1920, respectively, and that there was no purpose to permit one year to encroach upon or use an unexpended portion of the allowance for another year, and this is we apprehend the only close question presented, but in order to reach this construction, it is necessary as counsel for appellant seem to concede, to first get rid of the "on or before," or rather the "or before," as used in designating the time for payments to the commission, and to give controlling effect to the word "annual." We are not, however, permitted by any rule of statutory construction to eliminate one part of a statute in favor of another, arbitrarily, or except to give effect to the legislative intent as expressed by the act considered as a whole, and must if possible give some effect to all parts in a construction of the entire act.

As we have already seen, it was the purpose of the legislature by this act to extend financial assistance to the commission for the accomplishment of its approved aims, in an aggregate sum of $75,000.00, but within a limited time both as to use and payments. This limitation, and the only one stated, upon the time for use of the whole by the commission, was July 1st, 1920, when it ceases to exist, but the payment of the whole to the commission was to be made in installments, the payment of the first $25,000.00 to be made by the auditor out of the state's revenues for the fiscal year ending June 30, 1918, "on or before" that date, the second and third $25,000.00 out of the funds of the state for the next two succeeding years, "on or before" June 30th of each year; that is, not as the auditor might elect, but rather as required by the commission "on or before" such dates. This accords to both "on or before" and "annual" meanings not inconsistent with each other or with the legislative intent as expressed by the whole act.

The only remaining question is whether by directing the payments to be made out of the revenues and charged to the state's expenses in three separate years, the commission as an arm of the state was limited in its use of each annual installment of the appropriation, to the fiscal year within which it was payable.

To sustain this contention, we are cited by appellant to two cases, in the first of which, an "opinion of the judges" reported in 5 Neb. 566, it is stated in the opinion as the reason for holding an unexpended portion of an annual allowance lapsed: "for by the very terms of the act only so much as is necessary for a particular period of time is appropriated," while in the other case cited, State v. Hallock, 20 Nev. 73, it is stated as a reason for a similar construction of an act where express terms of limitation of the period of use were absent, that such had been the uniform construction placed upon such laws by the legislature and fiscal officers.

As there is no provision of the act before us appropriating only so much as was necessary for a particular period, nor any question of contemporaneous construction presented, neither of the cases cited is in point.

Upon the other hand we find in the fact that the legislature appropriated a certain fixed sum for the one purpose of eradicating or attempting to eradicate from the state illiteracy among adults within a limited time, and gave to the commission blanket authority to expend such parts thereof, "for the employment of county field agents, clerical help and other legitimate expenses as may, in the judgment and discretion of the commission, be necessary in the efficient and economic methods of teaching illiterate men and women," and authorized it to carry this work into as many of the counties of the Commonwealth "as it may deem proper for the purposes of furthering its work," an indication that the legislature did not intend to designate or control either the expenditure or the time of the expenditure by the commission of the several sums set apart for its use in an effort to accomplish a single great work within a fixed time. But even more convincing than such indication, is the fact that the legislature appropriated out of its revenues for the year ending June 30, 1918, the first annual appropriation of $25,000.00, knowing at the time that the act would not become effective until June 20th, and that the commission would have no opportunity within the ten days before the expiration of that fiscal year, to expend the sum appropriated out of the revenues for that year. To give to the act the construction contended for, we must be convinced by its phraseology ,and the purposes in view that the legislature intended to appropriate to the commission

for its use in one big final effort to eradicate illiteracy from the state, $25,000.00 for the first ten days of its enjoyment of the benefits of this act upon penalty of losing so much of the first $25,000.00 expressly appropriated and according to appellant's contention for a full year's work, as it did not use within ten days. To so construe the act would convict the legislature not only of an absurdity, but of having intentionally perpetrated upon the object of its solicitude and beneficence a sharp trick by professing to appropriate and ostensbly appropriating to its use an amount conceived to be necessary for its purposes, when in fact such was not its purpose, which must be found by implication in an innocent looking amendment, which upon its face indicates a desire and admonition that the work as a whole must be speedily prosecuted and completed within limited time, but which really meant to withdraw or defeat a part of the appropriation which it was estimated was necessary for the work, had there been no desire to speed its accomplishment.

The legislature must have realized and anticipated that the needs of the commission, instead of being the largest at the beginning and for only ten days, would increase gradually as the work was extended into the different counties of the state, of which there are one hundred and twenty, and to all of which it was authorized to go if in its discretion expedient, and this fact no doubt accounts for the use of "on or before" in fixing the time for the auditor to make payments, as well as the absence of a provision that unexpended balance should lapse; at least, it affords a sufficient reason for believing that the legislature did not mean that whatever of the first $25,000.00 appropriated out of the state's revenue for the year ending June 30th, 1918, and was not expended by the commission in the ten days available to it for that purpose, should lapse and never be available thereafter for the accomplishment of the one big, urgent purpose for which it was appropriated.

Wherefore, the judgment is affirmed.