POPPLEWELL'S ALLIGATOR DOCK NO. 1, INC., Appellant,

v.

REVENUE CABINET, Commonwealth of Kentucky, Appellee.

and

Revenue Cabinet, Commonwealth of Kentucky, Appellant,

v.

State Dock, Inc.; and Popplewell's Alligator Dock No. 1, Inc., Appellees.

No. 2001–SC–0434–DG, 2001–SC–0439–DG.

Supreme Court of Kentucky.

April 22, 2004.

As Modified June 3, 2004.

Leslie Rosenbaum, Rosenbaum & Rosenbaum, Lexington, Counsel for Appellant, Popplewell's Alligator Dock No. 1, Inc. and Appellee, State Dock, Inc.

Douglas M. Dowell, Legal Service Division, Revenue Cabinet, Frankfort, Counsel for Appellee*Appellant, Revenue Cabinet, Commonwealth of Kentucky.

Opinion of the Court by Justice KELLER.

## I. ISSUES

These consolidated appeals present two issues for the Court's consideration. In 2001–SC–434–DG, we answer a question concerning substantive sales and use tax law, and in 2001–SC–439–DG, we reexamine procedural law governing judicial review of a sales and use tax controversy.

Popplewell's Alligator Dock No. 1, Inc. ("Alligator Dock") rented houseboats to the public for recreation and vacation purposes. It collected and remitted sales and use taxes on the houseboat rentals to Kentucky's Revenue Cabinet ("Revenue Cabinet"), but it failed to remit taxes on gasoline it sold for use in the houseboats. After an audit, the Revenue Cabinet assessed taxes against Alligator Dock for the gasoline it sold. Alligator Dock contends that the gasoline sales were exempt from sales and use taxes under KRS 139.483's exemption for "fuel consumed in the operation of ... ships and vessels which are used principally in the transportation of property or in the conveyance of persons for hire." Was the gasoline sold by Alligator Dock for use in its houseboats exempt from Kentucky's sales and use tax? Because we hold that KRS 139.483's exemption does not apply to houseboats used principally for lodging, Alligator Dock owes sales and use taxes on the gasoline. We, therefore, affirm the Court of Appeals's decision upholding the Revenue Cabinet's assessment.

State Dock, Inc ("State Dock") also rented houseboats to the public for vacations. Without pursuing any of the administrative remedies available to it, State Dock filed a civil action in Franklin Circuit Court against the Revenue Cabinet in which it sought (1) a declaratory judgment that its houseboat rentals are not subject to sales and use taxes, and (2) a permanent injunction enjoining the Revenue Cabinet from assessing or attempting to collect such taxes. Alligator Dock intervened in the action and requested the same relief and an additional declaration that the gasoline it sold for consumption in the operation of its houseboats was not subject to sales and use taxes. The trial court dismissed the declaratory judgment actions on jurisdictional grounds because it found that State Dock and Alligator Dock (collectively "the Docks") were required to pursue their administrative remedies before seeking judicial review. The Court of Appeals, however, reversed the trial court and held that, because there was no factual dispute and the Docks only wished to ascertain the validity or applicability of KRS 139.483, the Docks were not required to exhaust their administrative remedies before they could seek declaratory relief. Were the Docks required to exhaust their administrative remedies? Because the Docks failed to demonstrate that pursuit of their administrative remedies was likely to be inadequate or an exercise in futility, they were required to exhaust their administrative remedies before seeking judicial review. Accordingly, we reverse the Court of Appeals on this issue and dismiss the Docks' declaratory judgment actions.

## II. BACKGROUND

### A. 2001–SC–434–DG

The facts are not disputed.[1] Alligator Dock operated a marina on Lake Cumberland in Russell County, Kentucky. As part of its retail business, Alligator Dock rented luxury houseboats to the public for recreation and vacation purposes. Under the terms of Alligator Dock's rental agreements, a person renting a houseboat took possession of it with a full tank of gasoline and was required to return it to the marina at the end of the rental period with a full tank of gasoline. If, upon the houseboat's return, its gasoline tank was not filled, the marina's employees would refill it, and the renter was charged an additional amount for the gasoline used during the rental period. Although Alligator Dock collected and remitted sales and use tax on its houseboat rentals,[2] it did not collect and remit sales and use taxes[3] on the gasoline sold by it and consumed in the operation of its rented houseboats.

After an audit, the Revenue Cabinet issued "sales and use tax assessments" totaling $12,018.51[4] against Alligator Dock for gasoline sales to persons renting its houseboats. Following a final ruling by the Revenue Cabinet that upheld its assessments, Alligator Dock appealed the assessments to the Kentucky Board of Tax Appeals ("KBTA") and argued that the gasoline sales were exempt from use taxes under KRS 139.483, which provides:

> The taxes imposed under the provisions of [the Sales and Use Taxes] [C]hapter shall not apply to the sale of, or the storage, use, or other consumption of, ships and vessels, including property used in the repair or construction of, supplies and fuel consumed in the operation of, and supplies consumed by crew members aboard such ships and vessels which are used principally in the transportation of property or in the conveyance of persons for hire.

The KBTA concluded that KRS 139.483's exemption did not apply because the houseboats were not "principally engaged or used in the transportation of property or the conveyance of persons for hire . . . ." Accordingly, the KBTA affirmed the Revenue Cabinet's final ruling and upheld its tax assessments against Alligator Dock. Alligator Dock then appealed to Franklin Circuit Court, which agreed with the KBTA's conclusion that the houseboats were not engaged "for hire" and affirmed the KBTA's decision. Seeking further review, Alligator Dock appealed to the Court of Appeals, which also agreed with this construction of the KRS 139.483 exemption and affirmed the Franklin Circuit Court's decision. This Court granted Alligator Dock's motion for discretionary· review, and we, too, affirm the tax assessments.

### B. 2001–SC–0439–DG

State Dock filed a declaratory judgment action against the Revenue Cabinet in which it sought a declaration that KRS 139.483 operated to exempt its houseboat rentals from sales and use taxes as well as

---

1. The case was submitted to the Kentucky Board of Tax Appeals ("KBTA") on stipulations of the parties and the deposition of an employee of the Revenue Cabinet.

2. KRS 139.600 ("For the purposes of the sales tax, gross receipts from rentals or leases of tangible personal property shall be reported and the tax paid in accordance with such rules and regulations as the cabinet may prescribe.").

3. Although the parties refer to the tax that the Revenue Cabinet seeks to collect on the gasoline as "sales and use tax," apparently it is properly designated as only a "use tax." *See Commonwealth ex rel. Ross v. Lee's Ford Dock, Inc.,* Ky., 551 S.W.2d 236 (1977).

4. Alligator Dock did not contest additional tax assessments of $2,120.91 for sales of gasoline to persons not renting houseboats from it.

a permanent injunction enjoining the Revenue Cabinet from assessing or attempting to collect sales taxes on its houseboat rentals. After it was permitted to intervene, Alligator Dock requested the same relief as State Dock, and, by amended complaint, also requested a declaratory judgment that its gasoline sales to persons renting its houseboats were exempt from sales and use taxes. The Revenue Cabinet asserted that the trial court lacked jurisdiction and moved to dismiss the action. The trial court agreed, held that the Docks were required to pursue the administrative remedies provided by statute, and granted the Revenue Cabinet's motion to dismiss. The Docks appealed and the Court of Appeals held that, because the facts were undisputed and the only issue involved the construction and application of KRS 139.483, the Docks were not required to exhaust their administrative remedies; thus, it reversed the case and remanded it to the trial court. We granted discretionary review and now reverse.

## III. ANALYSIS

### A. 2001–SC–434–DG

 As previously noted, Alligator Dock contends that its sale of gasoline consumed in the operation of its rental houseboats is exempt from sales and use taxes under KRS 139.483. Accordingly, this appeal involves the construction and application of KRS 139.483's sales and use tax exemption, and we begin that analysis with the observation that tax exemptions are disfavored and will be narrowly or strictly construed, with all doubts resolved against the exemption's application, and with the burden placed on the party claiming the exemption to show the party's entitlement to it.[5] In support of its contention, Alligator Dock argues that "the plain language of the statute calls for application of the exemption[,]" and the anchor of its argument, understandably, is *Barnes v. Department of Revenue.*[6]

*Barnes* is indeed facially similar to the present case. There, the Revenue Department (now the Revenue Cabinet) assessed a use tax on purchases of houseboats that a marina "registered ... as livery or boats for hire and ... leased on a weekly basis"[7] to vacationers. The Revenue Department ruled that the KRS 139.483 exemption applied only to "river-industrial vessels, such as barges and towboats," and not pleasure craft, because although the exemption was codified by the reviser of the statutes as part of the sales and use taxes chapter, KRS Chapter 139,[8] it was enacted as an integral part of the Kentucky Port and River Development Commission Act,[9] which was entitled "AN ACT relating to the Port and River Development and the taxation thereof," and was enacted for the purpose of "aid[ing] in the

5. *Revenue Cabinet v. Hubbard*, Ky., 37 S.W.3d 717, 719 (2000) ("We begin with the basic rule of statutory construction that tax exemptions are narrowly construed, and the party seeking the exemption has the burden to show that he, she, or it is entitled to the exemption."); *Camera Center, Inc. v. Revenue Cabinet*, Ky., 34 S.W.3d 39, 41 (2000) ("This Court recognizes that the burden is on the party claiming an exemption to demonstrate its entitlement to the exemptions and that they have met all statutory requirements; that exemptions from taxation are generally disfavored and that all doubts are resolved against an exemption."); *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, Ky., 689 S.W.2d 14, 18 (1985) ("Exemptions from taxation are generally disfavored and all doubts are resolved against an exemption.").

6. Ky.App., 575 S.W.2d 169 (1978).

7. *Id.* at 171.

8. KRS Chapter 139 is known as the "Veterans' Bonus Sales and Use Tax Law." KRS 139.010.

9. 1966 Ky. Acts ch. 64, § 12.

promotion and development of river-related industry, agriculture, and commerce in Kentucky[.]" [10] The Court of Appeals disagreed with the Revenue Department's conclusion and observed that KRS 139.483 "contains no language excluding houseboats from the application of the exemption[,]" and "draws no distinction between industrial commercial craft and pleasure commercial craft." [11] The *Barnes* Court then concluded "that the statute has a general application to all ships and vessels which are used primarily in the transportation of property or the conveyance of persons for hire" [12] and thus held that, when the marina rented the houseboats to other persons, the houseboats were being used in the conveyance of persons for hire and "are exempt from the use tax ... by virtue of KRS 139.483." [13]

In the case at bar, the KBTA, the trial court, and the Court of Appeals all distinguished *Barnes* on the same general bases, and the Revenue Cabinet urges this Court to do so as well. First, the Revenue Cabinet emphasizes that the *Barnes* Court did not dispense with the fundamental requirements of the exemption, and notes that, even under the logic of *Barnes*, the exemption would not apply to a case where a person purchased a houseboat for his or her personal use rather than for hire to others. Next, the Revenue Cabinet points out that, subsequent to *Barnes*, the legislature amended KRS Chapter 139's definitions of "sale" and "purchase" to include *bona fide* leases or rentals in the meaning of those terms. [14] The Revenue Cabinet asserts that, as a result of the amendment, the marina involved in *Barnes* would no longer owe a use tax *on the initial purchases of its houseboats*, [15] because: (1) its subsequent rentals of those houseboats constituted sales of the houseboats (*i.e.*, a rental is a sale after the 1985 amendment), and (2) given that "use" does not include "sale[s] [of the houseboats] in the regular course of [the marina's] business[,]" [16] the "use" essential to the application of the tax has been either precluded or negated. Instead, the Revenue Cabinet contends that *the marina's rentals of the houseboats* became the taxable transactions. [17] Accordingly, the Revenue Cabinet argues that

10. 1966 Ky. Acts ch. 64, § 2.

11. *Barnes*, 575 S.W.2d at 171.

12. *Id.*

13. *Id.* at 172.

14. 1985 Ky. Acts ch. 6, Part III, §§ 6–10. *See also Revenue Cabinet v. Ashland Oil, Inc.*, Ky.App., 888 S.W.2d 701, 704 (1994) (noting that "[t]he amendment enacted by the Legislature effective August 1, 1985, expanded the definition of 'purchase' contained in KRS 139.090 to include 'lease or rental.'"); 103 KAR 28:051 § 1(1) ("The lease or rental of tangible personal property for a consideration in Kentucky is treated as a sale or purchase the receipts of which are subject to the sales or use tax.").

15. The Revenue Cabinet states that at the time of *Barnes*, a houseboat rental "was a 'use' for purposes of the application of the sales and use tax law ... because it was *not* a

sale under the law as it then existed ...." (emphasis in original).

16. KRS 139.190 ("'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, or by any transaction in which possession is given, *except that it does not include the sale of that property in the regular course of business.*" (emphasis added)).

17. The Revenue Cabinet asserts in its brief to this Court that "the regulation promulgated to address the extension of the sales and use tax to bona fide leases or rentals specifically states: Taxable leases or rentals include the following types of tangible personal property: .... (e) Boats, canoes, *houseboats* and sailboats. 103 KAR 28:051 § 2(1)(e)." (emphasis added by Revenue Cabinet). And, the Revenue Cabinet notes that Alligator Dock stipulated that it has collected and remitted sales tax on its houseboat rentals.

*Barnes* does not apply to the present case for the reason "that the transactions at issue in *Barnes* and taxable but for the application of the KRS 139.483 exemption no longer figure in the application of KRS 139.483 because they are not taxable in the first place under current law." Thus, the Revenue Cabinet maintains that because the persons renting the houseboats from the marina are using the houseboats principally for their personal pleasure and not the transportation of property or the conveyance of persons for hire, the KRS 139.483 exemption does not apply and the gasoline sales are subject to the use tax. We agree with the Revenue Cabinet's view that, as a result of the amendment to Chapter KRS 139, *Barnes* is readily distinguishable and the exemption does not apply to the gasoline sales in the present case.

 Additionally, we agree with the Revenue Cabinet's contention that the *Barnes* Court's interpretation of the KRS 139.483 exemption was flawed. First, the Court of Appeals did not construe the exemption in accordance with the well-settled rule of statutory construction that tax exemptions are disfavored and thus will be narrowly or strictly construed.[18]

Instead, the court applied a contra rule— "when there is confusion, ambiguity or doubt about the meaning of a statute, such doubt must be resolved in favor of the taxpayer"[19]that is simply not applicable when a tax exemption is at issue.[20] In other words, although tax statutes creating liability are to be strictly construed against the taxing authority, exemptions are to be narrowly construed against the taxpayer,[21] and the *Barnes* Court started off on the wrong foot by applying the wrong rule of statutory construction. Second, the *Barnes* Court incorrectly concluded that "[b]ecause the Revenue Department has not previously assessed a use tax on houseboats they should not be permitted to impose this tax at this time without statutory authority"[22] because contemporaneous construction cannot be based upon either an administrative agency's mere nonaction or its failure to correctly administer the law.[23] Third, the *Barnes* Court incorrectly determined that the KRS 139.483 exemption was not an integral part of the Port and River Development Commission Act simply because the exemption was codified in the Sales and Use Taxes Chapter, KRS Chapter 139.[24] Although the *title of an enactment itself* is a proper consideration in its construction,[25] the *title of the KRS Chapter where an enactment is placed by*

18. *See supra* note 5.

19. *Barnes,* 575 S.W.2d 169, 172.

20. *Stoner Creek Stud, Inc. v. Revenue Cabinet Commonwealth of Kentucky,* Ky.App., 746 S.W.2d 73, 75 (1987) ("In general, tax statutes must be strictly construed and all doubts or ambiguities resolved in favor of the taxpayer. In the case of statutes providing exemption from tax, however, the converse is true, and ambiguities must be construed strictly against the taxpayer." (citations omitted)).

21. RONALD BENTON BROWN & SHARON JACOBS BROWN, STATUTORY INTERPRETATION: THE SEARCH FOR LEGISLATIVE INTENT § 7.12 (NITA 2002) [hereinafter BROWN & BROWN] ("[S]tatutes creating tax liabilities are to be strictly construed against the federal government. Conversely, deduc-

tions are matters of legislative grace, so they are to be narrowly construed against the taxpayer.").

22. *Barnes,* 575 S.W.2d at 171.

23. *Revenue Cabinet v. Lazarus, Inc.,* Ky., 49 S.W.3d 172, 175 (2001).

24. *Barnes,* 575 S.W.2d at 171 ("It appears to us that the statute is on its face an integral part and is located in the sales and use tax provisions of Chapter 139 of the statutes.").

25. *Meyers v. Walter,* Ky., 253 S.W.2d 595, 597 (1952) ("This construction is further supported by the title of the Act ...."); *Fayette County Fiscal Court v. Fayette County,* 314 Ky. 595, 236 S.W.2d 455 (1950); *Ingram's Adm'r v. Advance Motor Co.,* 283 Ky. 87, 140 S.W.2d 840, 841 (1940) ("We have held frequently

*the reviser of statutes* has no role to play in its interpretation.[26] The Port and River Development Commission Act was codified for the most part in KRS 154.310—.345, and the reviser of statutes recognized that the exemption at issue in this case was part of the Port and River Development Commission Act and thus codified § 1 of the Act[27] as KRS 154.345 to read as follows: "KRS 65.510 to 65.530, *139.483*, [and] 154.310 to 345 shall be known as the Port and River Development Commission Act."[28] Accordingly, the Court of Appeals erred when it improperly gave weight to the title of the KRS Chapter where the exemption was codified, but failed to give the weight that it should have to the title of the Act containing the exemption. Last,

and most important, although the *Barnes* Court correctly noted the most common rule in statutory construction, *i.e.*, "[s]tatutory language must be given its clear and commonly accepted meaning[,]"[29] it did not adhere to that rule in construing the exemption. The exemption requires that the ships and vessels (hereafter collectively "vessels") be "used principally in the transportation of property or in the conveyance of persons for hire."[30] *Barnes* erroneously construed the exemption as applying to any vessel "for hire."[31] Under the rules of English grammar, however, the phrase "for hire," which means "[a]vailable for use or services in exchange for compensation,"[32] modifies only the phrase "conveyance of persons."[33] Thus,

that in the construction of an Act its title is to be read in connection with it.").

**26.** KRS 446.140 ("Title heads, chapter heads, section and subsection heads or titles, and explanatory notes and cross references, in the Kentucky Revised Statutes, do not constitute any part of the law, except as provided in KRS 355.1–109.").

**27.** 1966 Ky. Acts ch. 64, § 1 ("This Act shall be known as the Kentucky Port and River Development Commission Act.").

**28.** KRS 154.345 (emphasis added) (repealed 1992 Ky. Acts ch. 105, § 77).

**29.** *Barnes*, 575 S.W.2d at 171. *Accord* KRS 446.080(4) ("All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning."); *Bailey v. Reeves*, Ky., 662 S.W.2d 832, 834 (1984) ("We have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion."); *Western & Southern Life Ins. Co. v. Weber*, 183 Ky. 32, 209 S.W. 716, 717 717 (1919) ("[N]o intention shall be read into the wording of the statute contrary to the plain meaning of the language employed."); BROWN & BROWN, *supra* note 21, § 4.2

("The most commonly stated rule today is that the 'plain meaning' of the statute is to control. There seems to be no dispute with this principle.").

**30.** KRS 139.483.

**31.** *Barnes*, 575 S.W.2d at 171 ("The statute draws no distinction between industrial commercial craft and pleasure commercial craft."). Likewise, in its brief, Alligator Dock construes the exemption as applying to "[v]essels that are 'for hire.'"

**32.** WILLIAM MORRIS, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 624 (1969). *Accord Beaver Creek Co-op. Tel. Co. v. Public Utility Com'n*, 182 Or.App. 559, 571, 50 P.3d 1231, 1237–38 (2002) ("In common usage", "for hire" means "available or offered for rent." *Webster's Third New Int'l Dictionary* at 892; *see also id.* at 1072 (defining "hire" and describing the phrase "for hire" to mean "available for use or service in return for payment").

**33.** *Smith v. Commonwealth*, Ky.App., 41 S.W.3d 458, 460 (2001) ("Furthermore, the participial phrase at the very end of the definition, 'constituting a felony,' is not preceded by a comma—a grammatical fact that renders it restrictive in nature modifying only the noun ... immediately preceding it ....");

the exemption is restricted to vessels used principally: (1) "in the transportation of property," and (2) "in the conveyance of persons for hire." Accordingly, the exemption applies to any vessel used principally "in the transportation of property," regardless of whether it is transporting property for compensation, but applies to a vessel conveying persons only when the conveyance is in exchange for compensation. In both *Barnes* and the present case, the houseboats were not used principally for either purpose; they were used principally to provide lodging to vacationers and for their recreational purposes. Any transportation of property was extremely insignificant and, like any conveyance of persons accomplished, was ancillary to the primary purposes of lodging and recreation.

 One of the fundamental maxims of statutory construction is that an act "is to be read as a whole[,]"[34] *i.e.*, "any language in the [act] is to be read in light of the whole [act], not just a portion of it."[35] "The point of this maxim is that the whole [act] provides the context into which to place any language found in the [act]."[36] As previously noted, the exemption at issue was passed as part of the Kentucky Port and River Development Commission Act that the General Assembly enacted to

---

*Citizens' Telephone Co. v. City of Newport*, Ky., 188 Ky. 629, 224 S.W. 187, 190 (1920) (" 'By what is known as the doctrine of the "last antecedent," relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote, unless such extension is clearly required by a consideration of the entire act.' " (citation omitted)). *Accord Barnhart v. Thomas*, —— U.S. ——, ——, 124 S.Ct. 376, 380, 157 L.Ed.2d 333, —— (2003) ("The Third Circuit's reading disregards—indeed, is precisely contrary to—the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase *that it immediately follows* .... While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is 'quite sensible as a matter of grammar.' " (citations omitted)); 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.33, p. 369–73 (6th ed. 2000 Revision) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' Thus a proviso usually is construed to apply to the provision or clause immediately preceding it .... Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.").

**34.** *Commonwealth v. Louisville Taxicab & Transfer Co.*, 210 Ky. 324, 275 S.W. 795 (1925) ("[T]he rule is that, in construing an act, it must be considered as a whole, and so construed, if possible, as to give effect to every part thereof, and to produce a harmonious whole, and we have decided we can look at other sections to see what the Legislature meant ...."); *George v. Scent*, Ky., 346 S.W.2d 784, 789 (1961) ("The presumption is that the Legislature intends an Act to be effective as an entirety. No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that significance and effect shall, if possible, be accorded to every part of the Act. So, the construction of the present Act requires consideration not of a few words ..., but of the whole Act ...."); *Greene v. Kentucky Illiteracy Commission*, Ky., 185 Ky. 99, 214 S.W. 436, 437 (1919) ("We are not, however, permitted by any rule of statutory construction to eliminate one part of a statute in favor of another, arbitrarily, or except to give effect to the legislative intent as expressed by the act considered as a whole, and must, if possible, give some effect to all parts in a construction of the entire act."). *Accord* BROWN & BROWN, *supra* note 21, § 5.9 ("An often-repeated maxim is that the statute is to be read as a whole.").

**35.** BROWN & BROWN, *supra* note 21, § 5.9.

**36.** *Id.*

aid the promotion and development of river-related, industrial-type commerce:

> The purpose of this Act is to create a state Commission to aid in the promotion and development of river-related industry, agriculture, and commerce in Kentucky; to aid in the promotion and development of local port authorities as authorized by KRS 65.510 to 65.659; to aid in the promotion and development of industrial districts, parks, and sites for accommodating industrial complexes that utilize the rivers and river-related resources; to analyze, plan, and aid in systematically developing river-related resources by the development of services and facilities; to promote the development of industrial parks and terminal facilities for manufacturing and distribution industries for attracting and serving private and public enterprises that are directly or indirectly river-oriented; to promote the exportation of Kentucky made products in foreign commerce, especially as related to the utilization of the navigable waterways; and to establish the powers necessary or appropriate to carry out and effectuate the purposes of this Act.[37]

Thus, when construed narrowly and in light of the whole act, KRS 139.483's tax exemption was intended by the legislature to reduce sales and use taxes upon industrial-type commercial vessels, e.g., towboats, and vessels that principally convey persons for hire, e.g., the Belle of Louisville and the Delta Queen, which were illustrative examples used in Barnes. As such, the exemption has no application to recreational vessels like Alligator Dock's houseboats. This construction of the exemption is further supported by context in the exemption's use of the phrase "supplies consumed by crew members aboard such ship and vessels[.]" Rental houseboats do not have crew members as such, but towboats and vessels such as the Belle of Louisville and Delta Queen do have crews.

Alligator Dock attempts to attack the constitutionality of the exemption, and, in so doing, essentially adopts as its argument language from Barnes to the effect that "if the [exemption] is applied so as to exclude from taxation boats or vessels such as the Belle of Louisville or the Delta Queen, but not other vessels, the [exemption] is unconstitutional because it results in discrimination and unjust treatment of a particular taxpayer."[38] Because Alligator Dock failed to serve notice on the Attorney General as required by KRS 418.075(2), however, the constitutionality of the exemption is not properly before this Court.[39] Because of the importance of the issue, however, we will briefly address it. We disagree with Alligator Dock's suggestion that the interpretation of the exemption we adopt would render the statute unconstitutional.

Because no fundamental right is at stake and no "suspect class" is implicated, the exemption is "analyzed for equal protection purposes only to determine if there is a 'rational basis' for the classification."[40] "Under the rational basis test, a classification must be upheld against an equal protection challenge if there is any

---

**37.** 1966 Ky. Acts ch. 64, § 2.

**38.** Barnes, 575 S.W.2d at 172.

**39.** KRS 418.075(2) ("In any appeal to the Kentucky Court of Appeals or Supreme Court or the federal appellate courts in any forum which involves the constitutional validity of a statute, the Attorney General shall, before the filing of the appellant's brief, be served with a copy of the pleading, paper, or other documents which initiate the appeal in the appellate forum. This notice shall specify the challenged statute and the nature of the alleged constitutional defect."). See also Preston v. Johnson County Fiscal Court, Ky., 27 S.W.3d 790, 795–98 (2000) (Keller, J. concurring).

**40.** Preston v. Johnson County Fiscal Court, Ky., 27 S.W.3d 790, 795 (2000) (citing General Motors Corp. v. Tracy, 519 U.S. 278, 311, 117 S.Ct. 811, 830, 136 L.Ed.2d 761 (1997)).

reasonably conceivable state of facts that could provide a rational basis for the classification."[41] The Revenue Cabinet offers several bases to justify a tax exemption for transactions relating to industrial-type commercial vessels and vessels conveying persons for hire, but not vessels used for pleasure or recreational purposes. The Revenue Cabinet asserts that "[t]he General Assembly could reasonably have viewed houseboats and other craft used for pleasure or recreational purposes and ships and vessels used principally in the transportation of property or conveyance of persons for hire as playing different roles in the economy and operating in different competitive environments or markets and thus meriting different tax treatment." It points out that, since the use of vessels for pleasure is usually seasonal, vessels used principally in the transportation of property or conveyance of persons for hire could have been reasonably viewed by the legislature as creating more-and-better-paying jobs than recreational vessels. We find this to be a legitimate basis for the distinction, and thus conclude that the exemption is constitutional.[42]

For the foregoing reasons, we hold that the KRS 139.483 exemption does not apply to Alligator Dock's sale of gasoline for use in the houseboats it rents.

## B. 2001–SC–0439–DG

In this case, the Docks make no claim that the administrative remedies available to them were inadequate; to the contrary, they assert a right to seek direct declaratory and injunctive relief regardless of the administrative remedies available to them. In both the circuit court and the Court of Appeals, the Revenue Cabinet maintained that the Docks were required to exhaust their administrative remedies prior to seeking judicial relief. The circuit court agreed with the Revenue Cabinet and dismissed the Docks' declaratory judgment action, stating that "resort to the administrative process would not be futile, and such relief would not be inadequate." The Court of Appeals, however, citing *Gray v. R.J. Reynolds Tobacco Co.,*[43] *Harrison's Sanitarium, Inc. v. Commonwealth, Dept. of Health,*[44] and *Franklin v. Natural Resources and Environmental Protection Cabinet,*[45] held that a party is not required to exhaust administrative remedies prior to seeking judicial relief when "there is no factual dispute and a party wishes only to ascertain the validity or applicability of a statute or regulation." Accordingly, the Court of Appeals remanded the action to the circuit court for further proceedings.

 The Revenue Cabinet correctly observes that the cases cited by the Court of Appeals do not support its holding and further asserts that "[t]he exception to the exhaustion [of administrative remedies] rule crafted by the Court of Appeals in its opinion below undermines and frustrates the important policies and purposes served by the exhaustion rule." As such, the

---

**41.** *Commonwealth v. Howard,* Ky., 969 S.W.2d 700, 703 (1998). *Accord F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

**42.** *Beach Communications, Inc.,* 508 U.S. at 313–14, 113 S.Ct. at 2101, 124 L.Ed.2d at 221 (1993) ("Where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.' "), *citing United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368, 378 (1980).

**43.** 200 Ky. 47, 252 S.W. 134 (1923).

**44.** Ky., 417 S.W.2d 137 (1967).

**45.** Ky., 799 S.W.2d 1 (1990).

Revenue Cabinet contends "that the administrative remedy must amount to an exercise in futility in order for that remedy to be disregarded and direct judicial relief allowed instead," and submits that, because the Docks had an adequate administrative remedy available to them, they were required to pursue it. We agree.

The Revenue Cabinet is correct to challenge the authorities relied upon by the Court of Appeals. First, *R.J. Reynolds Tobacco* does not support the rule enunciated by the Court of Appeals in this case; instead, the *R.J. Reynolds Court* upheld an injunction issued by the circuit court enjoining the

collection of an illegal tax[46] *because of an inadequate remedy at law.*[47] At that time, the "plaintiff could not recover the taxes from the county after collection by it, [and] the remedy by equitable action was clearly open to it ...."[48] Similarly, *Harrison's Sanitarium* is distinguishable from the present case, and in fact, supports the Revenue Cabinet's position. Even though *Harrison's Sanitarium* contains language indicating that the rule set forth by the Court of Appeals in the case *sub judice* had been adopted previously by our predecessor court,[49] in *Harrison's Sanitarium* the Court again allowed direct judicial relief *because of an*

---

**46.** An "illegal tax," also termed an "erroneous tax," is "[a] tax levied without statutory authority," "[a] tax on property not subject to taxation," or "[a] tax levied by an officer who lacks authority to levy the tax." BLACK'S LAW DICTIONARY 1469 (7th ed.1999). Thus, here, if the houseboat rentals and gasoline sales are exempt under KRS 139.483, the Docks are correct that the taxes that the Revenue Cabinet seeks to collect from them are illegal since the taxes are "on property not subject to taxation."

**47.** *R.J. Reynolds Tobacco,* 252 S.W. at 136.

**48.** *Id.* at 136.

**49.** We would note, however, that the cases cited in *Harrison's Sanitarium* for the rule that "a party may have direct judicial relief without exhaustion of administrative remedies when there are no disputed factual questions to be resolved and the issue is confined to the validity or applicability of a statute or ordinance[,]" *Harrison's Sanitarium,* 417 S.W.2d at 138, are of doubtful support for such a rule. For example, in *Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557 (1948), the first of three cases cited in support of the rule, the Court stated that "direct judicial relief is held available without exhaustion of administrative remedies *where the statute is charged to be void on its face, or where the complaint raises an issue of jurisdiction as a mere legal question, not dependent upon disputed facts,* so that an administrative denial of the relief sought would be clearly arbitrary[,]" and then ruled that "[t]he concept of the term

jurisdiction embraces action, or contemplated action, by the body without power and in the given case, *it is necessary for the judiciary to restrain the agency in order to prevent irreparable injury.*" *Id.* at 559 (emphasis added). Thus, *Goodwin* did not allow direct judicial relief merely because the issue presented was "the validity or applicability of a statute" and "there are no disputed factual questions"; instead, it required that either "the statute is charged to be void on its face," or that "an issue of jurisdiction as a mere legal question, not dependent upon disputed facts" is presented. *Goodwin,* accordingly, recognized the appropriateness of the statutory administrative appeal process if the trial court should determine that the administrative board possessed jurisdiction. *Id.* at 561. Here, the validity of KRS 139.483 was not placed at issue by Alligator Dock, and jurisdiction of the administrative board was not questioned. In *Louisville & Jefferson County Planning & Zoning Com'n v. Stoker,* Ky., 259 S.W.2d 443 (1953), the second case cited in *Harrison's Sanitarium,* the Court restated the ruling in *Goodwin* and, after noting that the case before it involved only a "pure question of law," pointed out that administrative remedies would be futile, stating "[t]here would have been no point in taking an appeal to the board of adjustment and appeals, because that board is not designed as a judicial body to pass on legal questions." *Id.* at 446. Accordingly, *Louisville & Jefferson County Planning & Zoning Com'n* is plainly not carte blanche authority for allowing direct judicial relief regardless of whether an adequate rem-

*inadequate remedy at law.*[50] And, in *Franklin,* unlike the case at bar, both the validity and constitutionality of a regulation was at issue. It was charged (1) that the regulation violated "the statutes by which the regulation purports to have been enacted,"[51] and was thus void; (2) that the regulation was also void because it was more stringent than preemptive federal law,[52] and (3) that the regulation was unconstitutional, in violation of both the United States and Kentucky constitutions.[53] As a result, an administrative proceeding would be an exercise in futility "because an administrative agency cannot decide constitutional issues[,]"[54] and therefore, no adequate remedy existed at law. For these reasons, we agree with the Revenue Cabinet that the cases cited by the Court of Appeals fail to support its conclusion that a party may seek direct judicial relief without first exhausting its administrative remedies when "there is no factual dispute and a party wishes only to ascertain the validity or applicability of a statute or regulation."

Instead, the cases support the conclusion that a party must demonstrate that it has an inadequate administrative remedy before it may obtain direct judicial relief without exhausting the available administrative remedies.

The Docks, however, seize upon language in *R.J. Reynolds Tobacco* and argue that an "illegal tax,"[55] alone, is a sufficient ground to justify direct judicial relief. We concede that *R.J. Reynolds Tobacco* contains language that indicates an illegal tax, alone, is sufficient, but observe that, in doing so, the Court relied upon two cases—*City of Lancaster v. Pope,*[56] which is also cited by the Docks for its argument, and *Negley v. Henderson Bridge Co.*[57]— that do not support that contention. *City of Lancaster v. Pope* states "that the illegality of a tax is regarded as a sufficient reason for enjoining its collection[.]"[58] However, it is clear that the injunction was upheld because the court found that "the remedy at law [was] inadequate."[59] In fact, *City of Lancaster v. Pope* relied upon

---

edy at law may exist. *Kentucky Bd. of Hairdressers and Cosmetologists v. Stevens,* Ky., 393 S.W.2d 886 (1965), is the third and final case cited in *Harrison's Sanitarium* for the proposition that Kentucky courts allow direct judicial relief without exhaustion of administrative remedies when there are no disputed factual questions to be resolved and the issue is confined to the validity or applicability of a statute. It too restated the rule in *Goodwin* and held that because "the Board had jurisdiction, and . . . its order was not void[,][t]he only process for attacking the Board's order . . . was by the administrative appeal provided" by statute. *Id.* at 888. Thus, like the other two cases cited in *Harrison's Sanitarium, Kentucky Bd. of Hairdressers and Cosmetologists* requires a party to exhaust administrative remedies except when the administrative order is charged to be void or the complaint raises "an issue of jurisdiction as a mere legal question, not dependent upon disputed facts."

50. *Harrison's Sanitarium,* 417 S.W.2d at 139 ("They have no way of initiating or precipitating a challenge except by a proceeding in

court. We hold the requirement of exhaustion to be inapplicable.").

51. *Franklin,* 799 S.W.2d at 3.

52. *Id.*

53. *Id.* at 3–4.

54. *Commonwealth v. DLX,* Inc., Ky., 42 S.W.3d 624, 626 (2001).

55. *See supra,* note 46, for definition of "illegal tax."

56. 156 Ky. 1, 160 S.W. 509 (1913).

57. 107 Ky. 414, 54 S.W. 171 (1899).

58. *Pope,* 160 S.W. at 511.

59. *Id.* ("[W]here the remedy by action to recover taxes lies only where they have been paid under duress of a restraint, as in Kentucky, and the officers could avoid such remedy by bringing an action at law instead of

*Bank of Kentucky v. Stone,*[60] in which the Court stated:

It is well settled that in the federal courts an action in equity will not lie to restrain the collection of a tax on the sole ground that it is illegal and void, and independently of every other consideration. It must appear from the special circumstances averred that there is *no adequate remedy at law,* and that there is some recognized ground for equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury.[61]

And, in *Negley v. Henderson Bridge Co.,* the Court also relied upon the inadequacy of a remedy at law in allowing direct judicial relief: "[T]he right to have an injunction to restrain the collection of an illegal and void tax has long been recognized in this state, *upon the ground of the inadequacy of the remedies at law.*"[62] We, therefore, disagree with the Docks' contention that an illegal tax, alone, is sufficient to permit direct judicial relief; an adequate remedy at law must not be available. We would add, however, that inasmuch as we have determined in 2001–SC–0434–DG that the Revenue Cabinet is entitled to collect tax on the houseboat rentals and gasoline sales, the Docks' claim that the Revenue Cabinet was seeking to collect an illegal tax is without merit.

■■■ Notwithstanding the Docks' failure to charge that KRS 139.483 was unconstitutional, the Docks assert that to construe the statute as urged by the Revenue Cabinet would make it unconstitution-al, and therefore, the Docks argue that they are not required to exhaust administrative remedies. Although we agree that, generally, a party may not be required to exhaust administrative remedies if the constitutionality of a statute is the issue,[63] we disagree with the Docks' contention. We recently addressed this issue in *Commonwealth v. DLX, Inc.,*[64] wherein we stated:

Exhaustion of administrative remedies is not necessary when attacking the constitutionality of a statute or a regulation as void on its face. This is because an administrative agency cannot decide constitutional issues. Thus, to raise the facial constitutional validity of a statute or regulation at the administrative level would be an exercise in futility. This exception does not apply in the case at bar, however, because DLX has not challenged the facial validity of the surface mining statutes and regulations. Rather, as its complaint shows, DLX's argument is that the Cabinet's application of the statutes and regulations resulted in an unconstitutional taking of its property.

When an administrative agency applies a statute unconstitutionally, it acts beyond the bounds of the constitution, rather than passing on a constitutional question. In other words, until a statute has been applied, there can be no unconstitutional application. This is the basis for the rule that one must first show injury as the result of a statutory application, before that application may be attacked as unconstitutional. Thus, exhaustion of administrative remedies is

---

distraining, injunction will lie. In such cases the remedy at law is inadequate. It is upon this theory, no doubt, that it has long been recognized in Kentucky ... that the illegality of a tax is regarded as a sufficient reason for enjoining its collection ...." (citation omitted).

60. 88 F. 383 (C.C.D.Ky.1898).

61. *Id.* at 390 (citations omitted; emphasis added).

62. *Negley,* 54 S.W. at 171 (emphasis added).

63. *DLX, Inc.,* 42 S.W.3d at 626 (citing *Goodwin,* 215 S.W.2d at 559).

64. Ky., 42 S.W.3d 624 (2001).

not futile to an as-applied challenge to a statute. Quite the contrary, it is the administrative action which determines the extent, if any, of the constitutional injury.[65]

 Usually, a party is required to exhaust available administrative remedies before seeking judicial relief.[66] "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may: (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review."[67] "In addition, an agency has an interest in discouraging frequent and deliberate flouting of the administrative process."[68] "[T]he exhaustion doctrine does not preclude, but rather defers, judicial review until after the expert administrative body has built a factual record and rendered a final decision."[69] "By honoring the exhaustion doctrine, courts avoid interfering with the administrative process, and the initial reviewing court benefits from the specialized knowledge of the agency."[70] With increasing case loads and demands upon the courts, it is important to note that "[t]he rule requiring exhaustion also promotes judicial economy by resolving issues within the agency, eliminating the unnecessary intervention of courts."[71]

 In 1994, the legislature enacted a comprehensive act relating to administrative hearings,[72] which was codified as KRS Chapter 13B, that brought together in one place "the varying grounds for review of an administrative decision already recognized in Kentucky jurisprudence,"[73] and provided that "[a] party may file a petition for judicial review *only after the party has exhausted all administrative remedies* available within the agency whose action is being challenged, and within any other agency authorized to exercise administrative review."[74] And, the Act specifically authorized a reviewing circuit court to grant a stay of a final order pending judicial review.[75] Thus, a party adversely affected by a final order of an administrative agency may seek judicial review and, if necessary, request a stay of the order during the judicial review.

Recent Kentucky appellate courts' decisions have steadfastly required the exhaustion of administrative remedies prior to allowing a party to seek direct judicial relief unless otherwise authorized by statute.[76] In *Kentucky Labor Cabinet v. Gra-*

**65.** *Id.* at 626.

**66.** *Id.* at 625 ("As a general rule, exhaustion of administrative remedies is a jurisdictional prerequisite to seeking judicial relief."); *Accord* 2 AM. JUR. 2D *Administrative Law* § 505 (1994) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts.").

**67.** 2 AM. JUR. 2D *Administrative Law* § 505 (1994).

**68.** *Id.*

**69.** *Id.*

**70.** *Id.*

**71.** *Id.*

**72.** 1994 Ky. Acts ch. 382.

**73.** *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet,* Ky., 983 S.W.2d 488, 490 (1998).

**74.** KRS 13B.140.(2) (emphasis added).

**75.** KRS 13B.140(4)(c).

**76.** *Commonwealth ex rel. Chandler v. Anthem Ins. Companies, Inc.,* Ky.App., 8 S.W.3d 48, 55 (1999) (holding that KRS 367.190(3) authorized the Attorney General to seek direct judicial relief and enjoin unfair trade practices without exhausting administrative reme-

ham,[77] we rejected a party's contention that it was not required to exhaust administrative remedies, and in so doing, we noted that the party neither questioned the constitutionality of a statute nor showed that it would be an exercise in futility to proceed through the administrative process. And only a few days before, in *Commonwealth v. DLX, Inc.*,[78] after remarking that a party need not exhaust administrative remedies when attacking the constitutionality of a statute or a regulation as void on its face, this Court held that a party must exhaust administrative remedies prior to seeking judicial review of an as-applied constitutional challenge.[79] As a result, we held "that DLX's failure to exhaust its administrative remedies by failing to appeal the Secretary's order, deprived the Franklin Circuit Court of subject-matter jurisdiction to hear DLX's takings claim."[80] Previously, in *Revenue Cabinet, Commonwealth of Kentucky v. Gillig*,[81] a case challenging the constitutionality of the Cabinet's method of assessing the value of unmined coal, this Court first "note[d] that the appellees in this case and any other taxpayers who believed their valuations were in excess of fair cash value, had the right to meet with the Cabinet to discuss: (1) the assessment; (2) the right to formally protest the assessment as provided by KRS 131.110; and (3) the right to take an appeal from any adverse final determination by the Cabinet to the Kentucky Board of Tax Appeals as provided by KRS 131.340." Then, this Court quoted approvingly *Parrent v. Fannin*,[82] where it was stated:

> [T]he claim that their new assessments are in excess of the fair cash value of their real property ... is a peculiar grist for the mill of the county board of assessment appeals.... The respondents should not have been permitted to avoid the well established requirement that a taxpayer must exhaust his administrative remedies before resorting to the courts.[83]

Accordingly, the *Gillig* Court stated that "because appellees had an adequate administrative remedy, [the] case should have first been decided by the Kentucky Board of Tax Appeals, not the circuit court[,]"[84] and held that "[c]onsequently, the respondents should not have been permitted to pursue their cause in the courts before exhausting their administrative remedies."[85]

In the case *sub judice*, although the facts were undisputed, the Docks did not raise the issue of the facial validity or constitutionality of KRS 139.483, and an adequate administrative remedy was available. Thus, the Court of Appeals erred in reversing the Franklin Circuit Court judgment dismissing this action.

## IV. CONCLUSION

For the above reasons, in 2001–SC–0434–DG, we affirm the Court of Appeals, and, in 2001–SC–0439–DG,[86] we reverse

---

dies, but commenting that except for the statute, direct judicial relief would be inappropriate.).

**77.** Ky., 43 S.W.3d 247 (2001).

**78.** Ky., 42 S.W.3d 624 (2001).

**79.** *Id.* at 626.

**80.** *Id.* at 627.

**81.** Ky., 957 S.W.2d 206, 211 (1997).

**82.** Ky., 616 S.W.2d 501, 503 (1981).

**83.** *Id.* at 503 (citations omitted). *Accord Tharp v. Louisville & N.R. Co.*, Ky., 307 Ky. 322, 210 S.W.2d 954, 955 (1948) ("It is, of course, an ancient and settled principle that an equity court will not exert its powers where the litigant has an adequate remedy at law.").

**84.** *Gillig*, 957 S.W.2d at 211.

**85.** *Parrent*, 616 S.W.2d at 504.

**86.** We would note, however, that our decision in 2001–SC–0434–DG is also dispositive of the

the Court of Appeals and reinstate the Franklin Circuit Court's judgment dismissing the Docks' complaints for lack of jurisdiction.

All concur.

underlying substantive issue of sales and use tax law in 2001–SC–0439–DG, *i.e.,* whether State Dock's houseboat rentals and sales of gasoline consumed in the houseboats' operation are exempt from sales and use taxes under KRS 139.483.